JOHN S. LEONARDO
United States Attorney
District of Arizona
JENNIFER LEVINSON
Arizona State Bar No. 020551
jennifer.levinson@usdoj.gov
PETER SEXTON
Arizona State Bar No. 011089
peter.sexton@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR- 13-00320-001-PHX-ROS |
| Plaintiff, | |
| vs. | **GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1, SENTENCING MEMORANDUM AND RESPONSE TO OBJECTIONS** |
| Roman Avezov, | |
| Defendant. | |

The United States of America, through undersigned counsel, hereby files its Motion for Downward Departure, Sentencing Memorandum and Response to Defendant's Objections to the Pre-Sentence Investigation Report. For the reasons set forth below, the Government recommends that Roman Avezov ("Avezov") be sentenced to 37 months imprisonment[1] followed by three years of supervised release.

**I.      Summary of Facts**

Between approximately March 2010 and March 2011, the defendant led a conspiracy in which he and his co-conspirators created and filled fraudulent oxycodone

---

[1] This recommendation assumes that the defendant's base offense level will be reduced by two levels in light of the forthcoming amendment to the Sentencing Guidelines as discussed in Section II(A) below.

prescriptions at pharmacies throughout the United States. Once acquired, Avezov and his co-conspirators sold the oxycodone to street-level users for a substantial profit. The conspiracy was based in Arizona, and while some prescriptions were filled in Arizona, many were not.

With some variation, when traveling outside of Arizona, the conspiracy generally proceeded as follows: Avezov chose a location within the United States to which he sent a group of his co-conspirators to fill the fraudulent prescriptions.[2] Typically one of the co-conspirators rented vehicles in Arizona and the group drove to the chosen location. The group usually consisted of driver/filler teams and a trip leader who would monitor police radios and complete other tasks such as printing the prescriptions and directing the teams when they traveled. The drivers transported the fillers from one pharmacy to another and watched for police while the filler went into the pharmacy to fill the prescriptions.

Avezov had one of his co-conspirators create a number of fake driver's licenses containing the fillers' pictures and fictitious biographical information. Before the group left Arizona, Avezov supplied them with the fake driver's licenses, prescription security paper, cash and other items.

Once they arrived at their destination, the group obtained hotel rooms using fictitious identities. The group usually created the prescriptions in the hotel room. Typically, each prescription was for 180 30mg oxycodone pills and utilized fictitious patient names that matched the fake driver's licenses that Avezov provided. The plan was to fill the prescriptions on nights and weekends when the doctors' offices were closed and the pharmacies were unable to reach the "prescribing" physicians to verify the prescriptions.

---

[2] Although there were times when Avezov travelled out-of-state with the group, he generally remained in Arizona.

1  To ensure that the pharmacies could not contact the "prescribing" physicians, the
2  group would look up and call doctors' offices in the target area to determine whether they
3  had an after-hours answering service. The doctors who did not have an answering
4  service were chosen as the "prescribing" physicians. They were able to look up the
5  "prescribing" physicians' DEA registration numbers on a website to which Avezov
6  subscribed.

7  After filling the prescriptions, the group pooled the pills and gave them to Avezov
8  upon their return to Arizona. Avezov and his co-conspirators would then sell the pills for
9  a substantial profit. Avezov typically paid his co-conspirators based on the number of
10 pills they obtained.

11 During the course of the conspiracy, Avezov's group filled prescriptions in at least
12 eight different states including Arizona, Oregon (two trips), Nevada, Colorado (two
13 trips), Virginia, Utah, Oklahoma and Washington. Conservative figures indicate that the
14 group obtained at least 37,000 30mg oxycodone tablets and that Avezov earned over
15 $400,000.

## II. Response to Defendant's Objections to Pre-Sentence Investigation Report

17 Although the government believes that the evidence contradicts some of the
18 defendant's objections to the Presentence Report, it will not address the objections as
19 none of them should affect the ultimate sentence in this case. Pursuant to F.R.Crim.P.
20 32(i)(3)(B), the court may indicate that a ruling on the defendant's objections is
21 unnecessary "because the matter will not affect sentencing." *See also, United States v.*
22 *Saeteurn*, 504 F.3d 1175, 1178-79 (9th Cir. 2007).

## III. Sentencing Guidelines

24 The Court is required to consider the United States Sentencing Guidelines as one
25 factor in determining a defendant's sentence. *See* 18 U.S.C. § 3553(A)(4)(a). The
26 Government agrees with the Presentence Report writer's offense level computation in
27 this regard. As stipulated in the plea agreement, the defendant's base offense level prior
28 to adjustments is 34. Four levels should be added based on the defendant's role as the

organizer or leader of a criminal activity that involved five or more participants. The base offense level should be reduced by two as a result of the defendant's acceptance of responsibility and the government hereby moves for an additional one-level reduction based on the defendant's early notification of his intent to enter a guilty plea. This results in a total offense level of 35.

Amendment 782 to the Sentencing Guidelines is due to take effect on November 1, 2014. This amendment will reduce the base offense levels set forth in U.S.S.G. § 2D1.1(c) by two. If the defendant agrees to waive his right to file a motion for modification of his sentence under 18 U.S.C. § 3582(c) on the basis of this Amendment, the government does not oppose a two-level downward variance. Such variance results in a total offense level of 33. The Government's sentencing recommendation assumes that this variance will be granted.

**IV.  Motion for Downward Departure**

Section 5K1.1 of the Sentencing Guidelines allows the court to depart downward from the applicable offense level if the defendant provided substantial assistance to the government in the investigation or prosecution of another individual. Avezov was able to provide substantial assistance and the government therefore moves for a downward departure of 12 levels based on the factors set forth in U.S.S.G. § 5K1.1 as follows:

**A.  Significance and Usefulness of Defendant's Assistance**

Avezov provided significant assistance to the United States. Not only did he provide information regarding his own prescription forgery ring, he also provided significant information about a similar organization of equivalent size that was operated by William Bonney ("Bonney").[3] Avezov was able to identify many of Bonney's co-

---

[3] William Bonney was indicted on April 15, 2014 in District of Arizona case number CR14-00536-PHX-GMS. He pled guilty to one count of Conspiracy to Possess With Intent to Distribute a Schedule II Controlled Substance on June 26, 2014.

conspirators and their respective roles as well as provide a timeline of their early activity and explain their methods. This information was essential in indicting Bonney as much of the information he provided could only be obtained via co-conspirator cooperation. In fact, without co-conspirator cooperation, the government may not have been able to prove Bonney's involvement in the conspiracy that he led. In addition, the information Avezov provided made it easier for the government to obtain corroborating information such as pharmacy records. Avezov's cooperation was likely also a significant factor in Bonney's decision to enter into a guilty plea.

### B.    Truthfulness, Completeness and Reliability of Information

Avezov readily accepted responsibility for his own criminal activity. Although he minimized the involvement of some of the participants who were closest to him, he was up-front with regard to everything else and the government believes that he provided truthful and complete information. Much of the information that he provided was corroborated.

### C.    Nature and Extent of Assistance

The government met with Avezov on a few occasions and he always made himself available to agents for follow-up. He also entered into a public cooperation plea agreement with a detailed factual basis. Although Avezov never had to testify, in part because of the strength of the information he and other cooperating defendants provided, the government would not have hesitated to use him as a witness.

### D.    Injury Suffered/Danger/Risk of Injury to the Defendant or his Family Resulting from Assistance

The government is not aware of any threats Avezov faces due to his cooperation. A cooperator, however, is always exposed to some degree of threats and intimidation especially while in custody. The defendant agreed to allow his cooperation to become public to assist with the prosecution of this case. Accordingly, the government believes that the risk of injury to Avezov is moderate.

### E. Timeliness of Assistance

Avezov began cooperating shortly after he was indicted and at a time when the government had limited information about the earlier portions of Bonney's drug trafficking organization. His cooperation came well before Bonney's indictment and played a substantial role in that indictment and prosecution. As a result of his timely cooperation, Avezov has been on pretrial release for over one-and-a-half years and has been fully compliant.

As a result of the defendant's assistance, the government moves for a 12-level downward departure bringing Avezov's total offense level to 21.

## V. 18 U.S.C. § 3553(a)(1)&(2) Factors

### A. Nature and Circumstances of the Offense

As explained above, the defendant led a national drug trafficking organization through which he illegally obtained and sold substantial quantities of oxycodone. The defendant committed this offense solely for financial gain and, in the process, undoubtedly harmed numerous individuals including the doctors whose DEA numbers he stole. This factor weighs in favor of a significant prison term.

### B. Defendant's History and Characteristics

The Presentence Report does indicate that the defendant had a prior felony conviction, however he was only 18 years-old at the time and the conviction has since been set aside. The defendant also appears to have a propensity toward substance abuse. Otherwise, it appears that Avezov had a normal upbringing and has a supportive family. The recommended sentence is appropriate in light of the defendant's history and characteristics.

### C. Deterrence and Other Factors

The need to promote respect for the law and provide general deterrence supports the imposition of a significant prison term. Prescription drug abuse is a serious problem in the United States that leads to scores of deaths each year. *See* 79 FR 49661-01 at 49675. Prescription drug trafficking is extremely lucrative and harsher sentences are

needed to deter such activity. It is also the type of activity that is ripe for general deterrence as it requires a substantial degree of planning.

While the need for general deterrence in this case is great, the goal of deterring this particular defendant from future crimes calls for a somewhat less significant sentence. The government believes that the recommended sentence will be sufficient to deter the defendant from future criminal activity in light of the fact that his criminal history is extremely limited, he was relatively young when he engaged in this criminal activity and he accepted responsibility for this offense without hesitation.

It appears that the defendant may be in need of some substance abuse treatment. To the extent that he does need it, the recommended sentence will allow him the opportunity to receive such treatment.

## VI. Conclusion

As explained above, based on the factors enumerated in 18 U.S.C. § 3553 and the fact that the defendant provided substantial assistance in the investigation and prosecution of other individuals, the government hereby requests that he receive a sentence of 37 months imprisonment followed by three years of supervised release.

Respectfully submitted this 8th day of October, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/Jennifer Levinson*
JENNIFER LEVINSON
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Michael D. Kimerer
*Attorney for defendant*


 *s/Rebecca Clarke Robinaugh*
U.S. Attorney's Office